USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/29/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
O.F.I. IMPORTS INC., a California corporation, :
:
                    Plaintiff, :
:
            -against- :   15-CV-7231 (VEC)
:
GENERAL ELECTRIC CAPITAL :   OPINION AND ORDER
CORPORATION, a Delaware corporation; and :
DOES 1-20, inclusive, :
:
                    Defendants. :
------------------------------------------------------------ X

VALERIE CAPRONI, United States District Judge:

       This is plaintiff O.F.I. Imports, Inc.'s ("OFI") second motion for leave to amend and third attempt at pleading a plausible claim. OFI alleged initially that the defendants, General Electric Capital Corporation and twenty unnamed individuals acting as its agents (collectively "GE Capital"), fraudulently induced OFI to overpay for the assets of Contessa Premium Foods, Inc. ("Contessa"). The Court dismissed those claims on September 26, 2016, Dkt. 60, and dismissed them with prejudice on July 20, 2017, Dkt. 69. Shifting theories, OFI now alleges that GE Capital breached the terms of the credit agreement used to finance the Contessa transaction by refusing to release its lien on OFI's assets. The Court previously dismissed these claims without prejudice on July 20, 2017. Dkt. 69. Before the Court is OFI's motion for leave to amend and file its proposed third amended complaint. Dkts. 70, 74. For the reasons that follow, the Court finds that leave to amend would be futile. Accordingly, OFI's motion is DENIED. This case is DISMISSED WITH PREJUDICE, and the Clerk of the Court is directed to enter judgment in favor of GE Capital.

1

# BACKGROUND

The backstory to OFI's acquisition of the Contessa assets is discussed at length in the Court's September 26, 2016 opinion, *see O.F.I. Imports, Inc. v. Gen. Elec. Capital Corp.*, No. 15-CV-7231 (VEC), 2016 WL 5376208 (S.D.N.Y. Sept. 26, 2016) ("*OFI I*"), and the Court's July 20, 2017 opinion, *see O.F.I. Imports, Inc. v. Gen. Elec. Capital Corp.*, No. 15-CV-7231 (VEC), 2017 WL 3084901 (S.D.N.Y. July 20, 2017) ("*OFI II*"). The Court assumes familiarity with the facts and only discusses those facts relevant to OFI's motion for leave to amend.[1]

OFI purchased nearly all of Contessa's assets on May 19, 2014. Proposed Third Am. Compl. (the "PTAC") (Dkt. 70 Ex. 1) ¶ 10. GE Capital provided financing for the transaction through a revolving credit facility. PTAC ¶ 11. In order to secure the loan, GE Capital took a lien on substantially all of OFI's assets. PTAC ¶ 12.

After this litigation began, on May 4, 2016, OFI repaid the balance of the loans to zero. PTAC ¶ 15. OFI then demanded that GE Capital release its liens. PTAC ¶ 17. According to OFI, "[d]espite having been paid in full and despite the stated requirements of the Credit Agreement, GE Capital refused to release its lien[s]." PTAC ¶ 18. Section 8.10(b) of the credit agreement (Dkt. 30 Ex. 1) (the "Credit Agreement")[2] governs GE Capital's obligation to release its liens. There are four conditions precedent to a release of GE Capital's liens:

---

[1] The Court assumes as true the facts in the PTAC and has not considered any of the factual allegations included in GE Capital's opposition to leave to amend and accompanying declarations.

[2] OFI did not attach the Credit Agreement to the PTAC but did reference that it had previously been filed in this action. PTAC ¶ 11. The Court deems the Credit Agreement to have been integrated into the PTAC. *See High Point Accessories, Inc. v. Sells-Floto, Inc.*, No. 97-CV-8143 (DAB)(JCF), 1998 WL 213189, at *3 (S.D.N.Y. April 29, 1998); *see also* PTAC ¶ 14 (quoting Section 8.10(b) of the Credit Agreement).

> (A) termination of the Revolving Loan Commitments, (B) payment and satisfaction in full of all Loans, . . . and all other Obligations under the Loan Documents . . . , (C) deposit of cash collateral with respect to all contingent Obligations . . . (excluding contingent Obligations . . . as to which no claim has been asserted) and (D) to the extent requested by Agent, receipt by Agent and the Secured Parties of liability releases from the Credit Parties each in form and substance acceptable to agent.

Credit Agmt. § 8.10(b)(iii).

In *OFI II*, the Court explained that OFI's proposed second amended complaint did not plausibly allege satisfaction of each of these conditions precedent. *See OFI II*, 2017 WL 3084901, at *5. "At most" the second proposed amended complaint "plausibly alleged the occurrence of the first two conditions [precedent]" because the Revolving Loan Commitments had terminated in accordance with the Credit Agreement on May 21, 2017, and OFI had repaid the outstanding loans. *Id.* at *6. The proposed second amended complaint did not, however, allege plausibly that OFI had provided a release to GE Capital "in form and substance acceptable to [GE Capital]" or that OFI had deposited cash collateral in respect of all contingent obligations. *Id.*

The PTAC attempts to cure those deficiencies. According to OFI, the Revolving Loan Commitments were terminated when OFI repaid the outstanding loans. PTAC ¶ 20(A). For the same reason, according to OFI, there were no outstanding obligations under the Credit Agreement as of May 4, 2016. PTAC ¶ 20(B). OFI was not required to post any cash collateral to cover contingent obligations because, according to OFI, "there were [no] contingent obligations that required any deposit." PTAC ¶ 20(C). And, OFI alleges that it was excused from providing GE Capital with a release because GE Capital "required [OFI] to sign a release that would have released GE [Capital] from all of the wrong doing as was alleged in the original complaint, the first amended complaint and the proposed second amended complaint." PTAC ¶ 20(D). According to OFI, "GE [Capital] may not insist upon performance of a condition

3

precedent when its non-performance has been caused by the [sic] GE [Capital] itself." PTAC ¶ 20(D).

GE Capital opposes OFI's motion for leave to amend. Opp'n (Dkt. 77).

**DISCUSSION**

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave" to a party to amend its complaint "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (additional citations omitted)). "A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015) (quoting *Lucente v. IBM Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must also accept as true all factual allegations contained within the complaint; this tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

The PTAC does not plausibly allege satisfaction of each of the four conditions precedent to GE Capital's obligation to release its liens under Section 8.8(b). Although OFI extinguished the balance of Loans under the Credit Agreement as of May 4, 2016, the "Revolving Loan Commitments" did not terminate until the Credit Agreement terminated on May 21, 2017. Assuming that as of that date OFI had satisfied two of the four conditions precedent to a release

– termination of the Commitments and repayment of outstanding Loans – the PTAC does not allege that OFI has ever provided GE Capital with an acceptable release.

The Revolving Loan Commitments did not terminate until May 21, 2017. The Credit Agreement defines the "Revolving Loan Commitments" as "Loans to the Borrower" made "from time to time" "during the period from the Closing Date through the Final Availability Date." Credit Agmt. § 1.1(a)(i). Through a chain of incorporation, the "Final Availability Date" is defined as "the earlier to occur of (a) May 21, 2017; and (b) the date on which the Aggregate Revolving Loan Commitment shall terminate in accordance with [the Credit Agreement]." Credit Agmt. § 11.1 (definitions of "Final Availability Date" and "Revolving Termination Date"). Until the Final Availability Date – May 21, 2017 – the Revolving Loan Commitments were available to OFI and were not terminated.

OFI's argument that the Revolving Loan Commitments were "terminated" when it paid all Loans outstanding under the Credit Agreement has no basis in the parties' agreement. By paying down the outstanding balance of Loans under the Credit Agreement, OFI satisfied the second condition precedent to a release, namely: "payment and satisfaction in full of all Loans." Credit Agmt. § 8.10(b)(iii)(B). Section 8.10(b)(iii)(A) separately requires the "termination of the Revolving Loan Commitments." Credit Agmt. § 8.10(b)(iii)(A). Thus, while OFI may have satisfied all outstanding "Obligations" under the Credit Agreement, the Revolving Lenders' "Commitments" remained outstanding, and those Commitments did not terminate until the Final Availability Date.

Assuming that, as of May 21, 2017, OFI had repaid all outstanding Loans and the Revolving Loan Commitments had terminated, OFI can state a claim for breach of contract as of that date only if it plausibly alleges satisfaction of the other two conditions precedent and a

breach by GE Capital. Despite being given another opportunity to do so, the PTAC does not allege that OFI has provided GE Capital with an acceptable release. OFI does not dispute this point, but it argues that it was excused from providing such a release under the doctrine of frustration of purpose because GE Capital insisted upon a general release, including of the claims OFI brought initially in this lawsuit.

As applied to a condition precedent, frustration of purpose, or New York's "prevention doctrine," prohibits one party from exercising its contractual discretion so as to prevent its counterparty from satisfying a condition precedent. "[A] party to a contract cannot rely on the failure of another to perform a condition precedent where he has frustrated or prevented the occurrence of the condition." *Mullinix v. Mt. Sinai School of Medicine*, No. 12-CV-8659 (PKC), 2015 WL 328050, at *3 (S.D.N.Y. Jan. 23, 2015) (quoting *Ferguson v. Lion Holding Inc.*, 478 F. Supp. 2d 455, 469 (S.D.N.Y. 2007)); *see also Kooleraire Serv. & Installation Corp. v. Bd. of Ed. of City of N.Y.*, 28 N.Y.2d 101, 106 (1971). "[W]here it applies, [the prevention doctrine] creates nothing more than an *implied* contractual obligation, similar to – and perhaps rooted in – the implied covenant of good faith and fair dealing." *Consol. Ed., Inc. v. Ne. Util.*, 426 F.3d 524, 529 (2d Cir. 2005). Like the implied covenant, the prevention doctrine must be applied in furtherance of the intent of the parties, and "[n]o obligation can be implied, . . . , which would be inconsistent with other terms of the contractual relationship." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983). When it applies, the prevention doctrine requires a party to refrain from exercising a contractual right in "bad faith—arbitrarily, irrationally or malevolently." *In Touch Concepts, Inc. v. Celco P'ship*, 949 F. Supp. 2d 447, 467 (S.D.N.Y. 2013).

The prevention doctrine does not apply in this case. "[T]he obligation of good faith and fair dealing does not negate a[n] expressly bargained-for clause that allows a party to exercise its discretion, unless that clause imposes a limit on the discretion to be exercised or explicitly states that the duty of good faith and fair dealing applies." *Paxi, LLC v. Shiseido Americas. Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009) (citing *Moran v. Erk*, 11 N.Y.3d 452, 456-57 (2008)); *see also Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 334 (S.D.N.Y. 2010) (collecting cases). In this case, Section 8.10(b)(iii)(D) of the Credit Agreement provides GE Capital with discretion to determine the "substance" of the release to be provided by OFI, and it includes no limit on GE Capital's discretion. By contrast, when the parties intended to limit either party's discretion, they did so clearly. The parties drafted a defined term, "Permitted Discretion," which means "a determination made in good faith and in the exercise of reasonable (from the perspective of a secured asset-based lender) business judgment," Credit Agmt. § 11.1; Section 4.14 provides that environmental audits will be conducted by a consulting firm that is "reasonably acceptable" to GE Capital, Credit Agmt. § 4.14; and in Section 8.8, the parties provided that GE Capital may withhold consent to repayments to any lender if it "reasonably determines" that it was required to withhold taxes, Credit Agmt. § 8.8(c).[3] The fact that Section 8.10(b)(iii)(D) requires a release of GE Capital in "form and substance acceptable to [it]" and does not include any of these limiting formulations is strong evidence the parties did not intend any limit on GE Capital's right to determine the form and substance of the release.

---

[3] In places the Credit Agreement provides that certain actions may be in GE Capital's "sole discretion." *See e.g.*, Credit Agmt. § 11.1 (definition of "Borrowing Base Certificate"). While the Credit Agreement could have made GE Capital's discretion regarding the terms of the release required by Section 8.10(b)(iii) more explicit by using the phrase "sole discretion," the Court does not perceive a significant difference between that term and the provision as drafted, which provides that the release must be in "form and substance acceptable to [GE Capital]."

7

Assuming *arguendo* that the prevention doctrine applies and GE Capital was required to exercise its discretion in good faith and in a manner that was neither arbitrary nor irrational, OFI is woefully short of pleading a breach of that duty. The only relevant allegation in the PTAC is that "in order to obtain [a release of GE Capital's liens], . . . [GE] required [OFI] to sign a release that would have released GE [Capital] from all of the wrong doing as was alleged in the original complaint, the first amended complaint and the proposed second amended complaint." PTAC ¶ 20(D). The PTAC does not allege facts from which the Court could infer that GE Capital's proposed release is arbitrary or irrational. To the contrary, demanding a complete release appears to the Court to have been fully rational, albeit unfavorable to OFI. The implied covenant does not require one party to do a favor for another. The PTAC also fails to allege facts from which the Court could infer that GE Capital's demand for a full release was in bad faith.[4] Thus, even assuming the prevention doctrine applied, the Court would find that OFI has not adequately alleged breach of the covenant of good faith and fair dealing.[5] *See Serdarevic*, 760 F. Supp. 2d at 334.

---

[4] In its reply brief, OFI appears to take the position that GE Capital acted in bad faith because it understood that OFI "could not" provide a full release. Reply Mem. (Dkt. 81) at 5. Briefs are not pleadings, and this suggestion appears nowhere in the PTAC. Moreover, while demanding a release that was beyond a counterparty's *power* might, under the right circumstances, qualify as action in bad faith, OFI appears to have confused incapacity with unwillingness. OFI does not allege that it was *unable* to give GE Capital such a release, only that it was *unwilling* to do so.

[5] Because OFI has not plausibly alleged that it provided GE Capital with a release or was excused from doing so, the Court need not address whether OFI has satisfied the remaining condition precedent by posting cash collateral to satisfy any contingent obligations. *See* Credit Agmt. § 8.10(b)(iii)(C). Nonetheless, the Court notes that OFI has not adequately alleged satisfaction of this condition precedent either. OFI alleges that "there were [no] contingent obligations that required any deposit." PTAC ¶ 20(C). Under certain circumstances such a conclusory allegation might be adequate. In this case, however, Section 9.5(c)(iii) of the Credit Agreement appears to impose a contingent obligation on OFI to reimburse GE Capital for costs and attorneys' fees associated with any proceeding related to the Credit Agreement. In briefing, OFI suggests that it is excused from complying with Section 9.5(c)(iii) because GE Capital's conduct was grossly negligent. Reply Mem. at 4. That may be true, but OFI has not alleged any facts to suggest GE Capital was grossly negligent and this theory is not plausibly alleged in the PTAC.

## CONCLUSION

This litigation has reached an end. OFI's motion for leave to amend and file the proposed third amended complaint is DENIED. OFI has not suggested that it could craft a fourth proposed amended complaint and the Court finds that any attempt to do so would be futile. Accordingly, this case is DISMISSED WITH PREJUDICE. The Clerk of the Court is directed to enter judgment in favor of GE Capital.

**SO ORDERED.**

Date: **December 29, 2017**
New York, NY

**VALERIE CAPRONI**
**United States District Judge**